John DOE[1] and Jane Doe, Plaintiffs-Appellants,

v.

AMERICAN NATIONAL RED CROSS, a corporation,
Defendant-Appellee.[†]

Supreme Court

*No. 92–2633–CQ. Oral argument March 3, 1993.—Decided
June 3, 1993.*

(Also reported in 500 N.W.2d 264.)

---

[1] During the pendency of this case we were notified of the
death of John Doe. The United States Court of Appeals for the
Seventh Circuit has ordered that Jane Doe, as administratix of
the Estate of John Doe, be substituted for John Doe as plaintiff-
appellant.

[†] Motion for reconsideration filed June 22, 1993.

611

For the plaintiffs-appellants there were briefs by *Joseph Becker, John P. Stuber, Bridget Rabb* and *Sauer, Becker, Flanagan & Lynch, Ltd.*, LaCrosse and *Maureen Reidy Witt, A. Bruce Jones, Steven C. Choquette, Carlos A. Samour* and *Holland & Hart*, of counsel, Denver, Colorado and oral argument by *Joseph Becker* and *Maureen Reidy Witt*.

For the defendant-appellee there was a brief by *Donald K. Schott* and *Quarles & Brady*, Madison and *Jacqueline R. Denning, Julia L. Erickson* and *Arnold & Porter* and *Edward L. Wolf*, of counsel, Washington, D.C. and oral argument by *Donald K. Schott* and *Jacqueline R. Denning*.

JON P. WILCOX, J.   This is a certification of a question of law from the United States Court of Appeals for the Seventh Circuit, pursuant to sec. 821.01, Stats. The question certified for our determination is:

> Whether a blood bank, sued in negligence for failing properly to screen donors and test blood or blood products, is "a person who is a health care provider" within the meaning of the Wisconsin medical malpractice statute of limitations, Wis. Stat. Ann. sec. 893.55?

We conclude that a blood bank is *not* a health care provider within the meaning of the Wisconsin medical malpractice statute of limitations, sec. 893.55, Stats.;[2] therefore, sec. 893.55 does not apply to claims against blood banks for failing to properly screen donors and test blood or blood products. The applicable statute in these cases is the personal injury statute of limitations, sec. 893.54, Stats.[3]

On December 26, 1983, John Doe was hospitalized at St. Joseph's Hospital in Arcadia, Wisconsin, with gastrointestinal bleeding. On two separate occasions during his hospitalization John Doe received transfusions of two units of packed blood cells. One of the units that he received on December 28, 1983, was identified as unit number 17M30013 which had been collected by the St. Paul, Minnesota Chapter of the American National Red Cross on December 8, 1983.

On August 11, 1988, the Red Cross was notified by the Minnesota Department of Health that the donor of unit 17M30013 had tested positive for the Human Immunodeficiency Virus (HIV). On November 2, 1988,

---

[2] Section 893.55, Stats., provides in relevant part:

(1)  Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
  (a)  Three years from the date of the injury, or
  (b)  One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

[3] Section 893.54, Stats., provides in relevant part:

The following actions shall be commenced within 3 years or be barred:
  (1)  An action to recover damages for injuries to the person.

the Medical Director of the Red Cross wrote to St. Joseph's Hospital notifying the hospital that the infected blood had made its way to the hospital in December, 1983. St. Joseph's Hospital informed the Red Cross that John Doe was a recipient of the infected blood. John Doe was contacted by St. Joseph's Hospital on December 15, 1988, and informed that he had received contaminated blood. He was advised that he should obtain a blood test. John Doe's blood was tested on December 16, 1988, and he was informed that he tested positive for the HIV antibody.

On October 18, 1991, John and Jane Doe filed an action against the Red Cross in the United States District Court for the Western District of Wisconsin alleging that the Red Cross was negligent in screening blood donors and testing blood to be used in transfusions. The parties filed cross-motions for summary judgment. The Red Cross raised a statute of limitations defense. On June 18, 1992, the district court granted the Red Cross' motion, ruling that the action was time-barred by the medical malpractice statute of limitations, sec. 893.55, Stats., which governs actions against health care providers. *Doe v. American National Red Cross,* 796 F. Supp. 395 (W.D. Wis. 1992). The district court rejected the Doe's argument that the governing statute was the personal injury statute of limitations, sec. 893.54, Stats. The district court concluded that the Red Cross is a "health care provider," therefore, the case was governed by the medical malpractice statute of limitations, sec. 893.55. *Id.,* 796 F. Supp. at 396. The district court reasoned that the Red Cross' "activities are an integral part of the health care process, including the screening and testing of donor blood . . . . [Red Cross'] services are vital in helping insure the health of

the ultimate recipient of the transfusion." *Id.,* 796 F. Supp. at 402.

The question presented is significant because fact situations similar to the instant case are likely to recur in the future. John Doe's injury occurred on December 28, 1983, when he received the blood transfusion. He discovered his injury on December 16, 1988, when he was informed he tested positive for the HIV antibody. John and Jane Doe filed their claim on October 18, 1991. John and Jane Doe's claims would be barred under the medical malpractice statute of limitations, sec. 893.55, Stats., because the claims were filed more than one year after the date John Doe discovered his injury and more than five years from the date of the alleged act or omission. However, under the personal injury statute of limitations, sec. 893.54, Stats., the claims are not barred because they were filed within three years of the date on which John Doe discovered his injury.[4]

The district court properly stated that "[t]he threshold issue to be decided is whether plaintiff's action is governed by the medical malpractice statute of limitations, Wis. Stat. sec. 893.55, or by the personal injury statute of limitations, Wis. Stat. sec. 893.54." Section 893.55 is the more specific of the two statutes and applies only when the injury arises as the result of an act or omission of a "health care provider."

---

[4] Wisconsin adheres to the discovery rule for the accrual of a cause of action in tort. *Hansen v. A.H. Robins Co., Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983); *Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 388 N.W.2d 140 (1986). Under the discovery rule, the statute of limitations begins to run when the potential plaintiff discovers the injury, or in the exercise of due diligence should have discovered the injury. *Hansen,* 113 Wis. 2d at 560; *Borello,* 130 Wis. 2d at 411.

The question in this case centers on the meaning of the statutory language "health care provider." Specifically, sec. 893.55, Stats., applies in this case only if the term "health care provider" includes blood banks like the Red Cross. If "health care provider" does not include blood banks, then sec. 893.54 instead of sec. 893.55 is the applicable statute. The term "health care provider" is not defined in Chapter 893.

The aim of all statutory interpretation is to discern the intent of the legislature. *Kelley Co., Inc. v. Marquardt,* 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). In ascertaining a statute's meaning, our first inquiry is to the plain language of the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *Id.*

The language of sec. 893.55 is clear and unambiguous. We have previously recognized that "[t]he term 'health care provider' in sec. 893.55, Stats., plainly applies to anyone who professionally provides health care to others." *Clark v. Erdmann,* 161 Wis. 2d 428, 438–39, 468 N.W.2d 18 (1991). The Red Cross in its blood banking activity does not professionally provide health care to others. The Red Cross collects blood from donors, tests it, processes it, and sells it to hospitals and physicians without knowledge of which patient will ultimately receive the blood product. The Red Cross plays no role in the diagnosis, treatment or care of patients. The Red Cross is the supplier of a product that is used by health care providers in their treatment

of patients.[5] The Red Cross is similar to pharmaceutical companies that supply products for use by health care providers. Thus, it is our determination that the term "health care provider" under sec. 893.55 does not include blood banks.

This case is different from *Clark* where we found that a podiatrist was a "health care provider" under sec. 893.55. The Red Cross is not involved in the diagnosis, treatment or care of patients as are podiatrists. The Red Cross is not licensed to practice medicine by the state of Wisconsin or any medical examining board. Likewise, we reject the Red Cross' argument that this case is similar to claims against radiologists or pathologists who have no direct patient contact but fall within the scope of sec. 893.55. The Red Cross is not involved in diagnosing and recommending treatment for patients as are radiologists and pathologists. The conduct of the Red Cross in collecting and selling blood products is akin to the conduct of pharmaceutical manufacturers or suppliers of medical equipment, not health care providers.

■

The Red Cross argues that its blood collection and supply activities are tied to the diagnosis, treatment and care of transfusion recipients because its services are vital in helping insure the health of the ultimate transfusion recipient. The Red Cross contends that it maintains an indirect relationship with blood recipi-

---

[5] This court has recognized that "[b]lood is a product which is furnished in connection with professional services." *Hoven v. Kelbe,* 79 Wis. 2d 444, 462 n.10, 256 N.W.2d 379 (1977). The Wisconsin legislature recognized that blood is a product when it enacted the blood shield statute which precludes strict product liability claims and breach of warranty claims in contaminated blood cases. *See* sec. 146.31(2), Stats.

ents through the physicians and medical personnel who supply the medical care to the patients. However, the provision of a lifesaving product that is later prescribed for a patient does not transform the Red Cross into a health care provider. Many pharmaceutical companies supply drugs that are vital in helping insure the health of patients. Under the reasoning of the Red Cross every pharmaceutical and medical device manufacturer would be a health care provider subject to the medical malpractice statute of limitations in sec. 893.55. Prior Wisconsin cases recognize that entities which manufacture and supply medical products are subject to the personal injury statute of limitations in sec. 893.54. *See Hansen,* 113 Wis. 2d 550; *S.J.D. v. Mentor Corp.,* 159 Wis. 2d 261, 463 N.W.2d 873 (Ct. App. 1990).

We can see no significant difference between the provision of blood by the Red Cross and the provision of vital drugs or medical devices by pharmaceutical and medical supply companies. Both entities supply vital substances to hospitals and physicians for use in patients. Both perform tasks of quality control that may involve professional expertise including research, testing and screening of its products. These quality control measures are designed to minimize the health risks to the product recipients. Each has its own supervisory medical board staffed with physicians who specialize in particular fields. The fact that physicians may supervise activities does not transform a product manufacturer or supplier into a health care provider. We conclude that neither the Red Cross nor pharmaceutical companies are subject to the medical malpractice statute of limitations because they do not provide health care to others.

We find persuasive the analysis and reasoning of other courts in similar cases which have concluded that blood banks do not provide health care to blood transfusion recipients and that blood banks are not subject to the medical malpractice statutes.[6] *See Kaiser v. Memorial Blood Center of Minneapolis, Inc.,* 486 N.W.2d 762 (Minn. 1992); *Doe v. American National Red Cross,* 798 F. Supp. 301 (E.D.N.C. 1992); *J.K. and Susie L. Wadley Research Institute and Blood Bank v. Beeson,* 835 S.W.2d 689 (Tex. Ct. App. 1992); *Silva v. Southwest Florida Blood Bank, Inc.,* 601 So.2d 1184 (Fla. 1992); *Sweeney v. Presbyterian / Columbia Presbyterian Medical Center,* 763 F. Supp. 50 (S.D.N.Y. 1991); *Miles Laboratories, Inc. Cutter Laboratories Division v. Doe,* 556 A.2d 1107 (Md. 1989).

The court's analysis in *Doe v. American National Red Cross,* 798 F. Supp. 301 (E.D.N.C. 1992), is particularly insightful. The facts of that case were similar to the instant case. John and Jane Doe brought an action against the Red Cross alleging that the Red Cross was negligent in failing to properly screen and test blood for HIV. John Doe received a transfusion of HIV infected blood and ultimately died of AIDS. The district court held that the plaintiff's action was not a medical malpractice action and therefore, was not subject to North Carolina's 4–year statute of repose for malpractice

---

[6] We are aware that some courts have reached a contrary conclusion, however we do not find the reasoning of those courts persuasive or applicable to this case. *See Bradway v. American National Red Cross,* 426 S.E.2d 849 (Ga. 1993); *Branch v. Willis-Knighton Medical Center,* 607 So.2d 883 (La. Ct. App. 1992); *Wilson v. American Red Cross,* 600 So.2d 216 (Ala. 1992); *Smith v. Paslode Corp.,* 799 F. Supp. 960 (E.D. Mo. 1992); *Doe v. American Red Cross Blood Services, S.C. Region,* 377 S.E.2d 323 (S.C. 1989).

actions which would have barred the claim. The district court stated:

> The Red Cross did not at any time examine, treat, care for, or render any medical diagnosis on the Does. Although defendant mentions that its processing of blood is for the ultimate protection of the recipient, defendant fails to cite any substantial connection linking John or Jane Doe to defendant in a professional capacity. Furthermore, the court believes that defendant's argument fits more in line with that of a pharmaceutical company which supplies various medicines to hospitals and doctors for use in their patients. The transfusion of another's blood, like the taking or injection of a pharmaceutical (particularly that of an intravenous solution designed to provide nourishment to patients who cannot eat or feed themselves), is the process of injecting a substance to dramatically improve one's health, or more often than not, save one's life. In this sense, blood banks and pharmaceutical manufacturers can be seen in much the same light. First, both entities supply vital substances to hospitals and physicians for ultimate use in patients. Second, both perform tasks of quality control each unique to its own processing methods of blood and pharmaceuticals—research and development, testing, and screening. And third, each has its own supervisory medical board staffed with its own physicians who specialize in a particular field associated with the functions of each entity. From this, the court finds that the collection, distribution and sale of blood, like the manufacture and sale of pharmaceuticals, is not the practice of medicine. The Red Cross did not in any way act as a physician to the Does.

*Doe,* 798 F. Supp. at 305.

Similarly, the Florida Supreme Court found that a blood bank that collects blood and sells it to a hospital is not a health care provider for purposes of the Florida medical malpractice statute of limitations. *Silva,* 601 So.2d at 1189. The court stated:

> The blood bank and its employees never saw the recipients of the blood product or had any contact whatsoever. Neither the blood bank nor any of its employees had any knowledge or information about the recipients' medical conditions. [The blood bank] played no role in determining the nature of the plaintiff patients' illnesses, did not treat those patients, and did not attend to the personal needs of those patients. The blood bank simply did not deal with the recipient patients . . . . *[The blood bank] was merely the supplier of a product.* (emphasis added).

*Id.,* 601 So.2d at 1187.

We conclude that a blood bank, sued in negligence for failing properly to screen donors and test blood or blood products, is *not* a "person who is a health care provider" within the meaning of the Wisconsin medical malpractice statute of limitations, sec. 893.55, Stats. The applicable statute in these cases is the personal injury statute of limitations, sec. 893.54, Stats.

*By the Court.*—Certified question answered in the negative and cause remanded to the United States Court of Appeals for the Seventh Circuit.